Dylan McFarland
Seamus Molloy
KNIGHT NICASTRO MACKAY, LLC
283 W. Front Street, Suite 203
Missoula, Montana 59802
Telephone: (406) 206-7102
Facsimile: (816) 396-6233
mcfarland@knightnicastro.com
molloy@knightnicastro.com

*Attorney for Plaintiff*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| BRENT SCHWAB,<br><br>                              Plaintiff,<br>vs.<br><br>HUB INTERNATIONAL MOUNTAIN STATES LIMITED, a Wyoming Corporation, HUB INTERNATIONAL LIMITED, a Delaware Corporation, and JOHN DOES 1-5,<br><br>                              Defendants. | Cause No.<br><br>**COMPLAINT, REQUEST FOR DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL** |

COMES NOW, Plaintiff Brent Schwab, by and through his counsel, Dylan McFarland and Seamus Molloy of Knight Nicastro MacKay, LLC, and respectfully submits his Complaint and Demand for Declaratory Relief and alleges as follows:

1

## PARTIES

1. Plaintiff, Brent Schwab, is and was at all times relevant to the allegations in this Complaint a citizen of Yellowstone County, Montana.

2. Defendant HUB International Mountain States Limited is currently, and at all times relevant to the allegations in this Complaint, a Wyoming Corporation, with its principal place of business in Billings, Montana. Defendant HUB International Mountain States Limited is a wholly-owned subsidiary of Defendant HUB International Limited.

3. Defendant HUB International Limited is a Delaware Corporation with its principal place of business in Chicago, Illinois. HUB International Limited is the parent company of Defendant HUB International Mountain States Limited. Defendants HUB International Mountain States Limited and HUB International Limited are collectively referred to as "HUB" throughout this Complaint.

4. John Does 1–5 are unknown individuals or entities who may be liable, in whole or in part, to Plaintiff for the allegations in this Complaint. If such individuals or entities are identified, Plaintiff reserves the right to seek leave of Court to amend the Complaint.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a), because this is a controversy between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. This Court also has subject matter jurisdiction over this matter under the Declaratory Judgment Act, 28 U.S.C. § 2201(a).

7. This Court has personal jurisdiction over HUB as this matter arises out of HUB's business operations and employment of Plaintiff in Montana.

8. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the District of Montana as all the events or omissions giving rise to the claim occurred in Montana.

## FACTS

9. Plaintiff restates and realleges paragraphs 1 through 7 as if fully set forth herein.

10. HUB hired Plaintiff in October of 2018 as a Sales Executive.

11. Under the terms of Plaintiff's employment contract, HUB could only terminate Plaintiff's employment for cause.

12. HUB required Plaintiff to sign a "Confidentiality and Non-Solicitation Agreement" as a condition of his employment.

13. The Confidentiality and Non-Solicitation Agreement prohibits Plaintiff from directly or indirectly:

(A) soliciting any of HUB's clients or prospective clients;

(B) accepting a broker or agent of record appointment for the placement of insurance for any of HUB's clients or prospective clients;

(C) placing or brokering insurance on behalf of any of HUB's clients or prospective clients;

(D) providing insurance administrative functions or consulting services to any of HUB's clients or prospective clients; or

(E) interfering with, damaging, or attempting to interfere with or damage any member of the HUB Group's business relationship with any Client or Prospective Client.

14. According to its terms, the Confidentiality and Non-Solicitation Agreement's prohibitions apply for two years following Plaintiff's termination of employment for any reason, whether voluntary or involuntary or with or without cause.

15. The Confidentiality and Non-Solicitation Agreement's prohibitions applied equally to all HUB clients, regardless of when or how Plaintiff developed relationships with those individuals and businesses.

16. The Confidentiality and Non-Solicitation Agreement provided that if Plaintiff violated the agreement, Plaintiff would be liable to HUB for two times the revenue HUB lost as a direct or indirect result.

17. The Confidentiality and Non-Solicitation Agreement provided that the prevailing party will be entitled to all costs and expenses, including reasonable

attorneys' fees, it incurs if any lawsuit or other action is instituted to enforce the agreement.

18. When Plaintiff joined HUB, he brought with him several clients with whom he had previously developed relationships before joining HUB and with whom HUB had not previously done business.

19. In addition to the clients that Plaintiff brought with him, Plaintiff also developed many new clients after joining HUB.

20. Within 18 months of joining HUB, Plaintiff became one of HUB's top producers.

21. In August of 2020, HUB formally disciplined Plaintiff for alleged insubordination and engaging in inappropriate behavior toward his supervisor and disrespecting co-employees.

22. In August of 2020, Plaintiff informed HUB that he had been diagnosed with Bipolar Disorder and requested reasonable accommodations for his disability.

23. After informing HUB of his disability, Plaintiff met with a member of HUB's Human Resources Department to discuss possible accommodations to help him perform the essential functions of his job.

24. After meeting with Plaintiff, HUB agreed to implement a "Confrontation Plan" to help Plaintiff prevent outbursts.

25. In August of 2020, Plaintiff also took two weeks of protected leave to learn about his condition, learn appropriate coping skills, and to seek additional treatment.

26. After Plaintiff returned from leave, he resumed doing his job without incident.

27. In December of 2020, HUB fired Plaintiff for allegedly having an outburst at work.

28. Having outbursts is a symptom of Plaintiff's Bipolar Disorder.

29. When he was fired, Plaintiff was told that superiors at HUB International Limited made the ultimate decision to terminate him.

## COUNT I
## WDEA – WRONGFUL TERMINATION
(Mont. Code Ann. § 39-2-904)

30. Plaintiff restates and re-alleges paragraphs 1 through 27 as if fully set forth herein.

31. Plaintiff was Defendants' employee.

32. Plaintiff had completed his probationary period of employment.

33. Plaintiff's discharge was not for good cause.

34. Plaintiff's discharge was in violation of the express provisions of its own written personnel policies.

35. Defendants' wrongful discharge caused Plaintiff damages in amounts to be proven at trial.

36. Plaintiff is entitled to lost wages and fringe benefits and any interest upon lost wages and fringe benefits.

37. Plaintiff is also entitled to attorneys' fees and costs as permitted by the Parties' contract.

## COUNT II
## BREACH OF CONTRACT (ALTERNATIVE COUNT)

38. Plaintiff restates and realleges Paragraphs 1 through 35 as if fully set forth herein.

39. This count is alleged in the alternative in the event Montana's Wrongful Discharge from Employment Act, Mont. Code Ann. § 39-2-901, *et seq.*, is held to be inapplicable to Plaintiff's employment with HUB.

40. Plaintiff entered into a legally binding employment contract with HUB.

41. According to Plaintiff's employment contract, HUB could only terminate Plaintiff's contract for cause.

42. HUB breached Plaintiff's employment contract by terminating him without cause.

43. HUB also breached Plaintiff's employment contract by violating the implied covenant of good faith and fair dealing.

44. HUB also breached Plaintiff's employment contract by violating its own personnel policies.

45. As a result of Defendants' breach, Plaintiff has suffered damages in an amount to be determined at trial.

46. Plaintiff is also entitled to reasonable attorneys' fees and costs as allowed by Plaintiff's employment contract.

## COUNT III
## DECLARATORY RELIEF
### (Covenant not to Compete)

47. Plaintiff restates and realleges Paragraphs 1 through 44 as if fully set forth herein.

48. The parties to this suit dispute whether the Confidentiality and Non-Solicitation Agreement that they entered into is enforceable.

49. This action thus seeks a declaration that the provisions of the Confidentiality and Non-Solicitation Agreement are unenforceable to the extent they are determined to be an unreasonable restraint of trade.

50. The Confidentiality and Non-Solicitation Agreement prohibits Plaintiff from directly or indirectly:

   (A) soliciting any of HUB's clients or prospective clients;

   (B) accepting a broker or agent of record appointment for the placement of insurance for any of HUB's clients or prospective clients;

    (C)    placing or brokering insurance on behalf of any of HUB's clients or prospective clients;

    (D)    providing insurance administrative functions or consulting services to any of HUB's clients or prospective clients; or

    (E)    interfering with, damaging, or attempting to interfere with or damage any member of the HUB Group's business relationship with any Client or Prospective Client.

51. According to its terms, the Confidentiality and Non-Solicitation Agreement's prohibitions apply for two years following Plaintiff's termination of employment for any reason, whether voluntary or involuntary or with or without cause.

52. The Confidentiality and Non-Solicitation Agreement's prohibitions applied equally to all HUB clients, regardless of when or how Plaintiff developed relationships with those individuals and businesses.

53. The Confidentiality and Non-Solicitation Agreement provided that if Plaintiff violated the agreement, Plaintiff would be liable to HUB for two times the revenue HUB lost as a direct or indirect result.

54. The Confidentiality and Non-Solicitation Agreement is an unreasonable restraint of trade because it includes restrictions that are greater than what is necessary to protect HUB's legitimate business interests and imposes an unreasonable burden upon Plaintiff.

55. Among other things, the Confidentiality and Non-Solicitation Agreement is overbroad to the extent it prohibits Plaintiff from doing business with

9

clients he brought with him to HUB and with whom HUB had not previously done business.

56. The protections afforded to HUB under the Confidentiality and Non-Solicitation Agreement and the burden imposed on Plaintiff are also unreasonable because HUB terminated Plaintiff.

57. The Confidentiality and Non-Solicitation Agreement is also unenforceable to the extent it seeks to impose a penalty on Plaintiff for any violation of the agreement.

58. Plaintiff is entitled to a judgment and order declaring HUB's constraints upon his future employment to be unenforceable.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully prays for the following relief:

1. Judgment for Plaintiff;
2. For all remedies and damages under Mont. Code Ann. § 39-2-905(1);
3. For an award of attorneys' fees and costs;
4. For declaratory relief as requested above;
5. Interest; and
6. For such other relief as the Court finds just and reasonable.

## DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff and demands a jury trial on all issues of fact in the above case.

DATED this 14th day of January, 2021.

                              KNIGHT NICASTRO MACKAY, LLC

                              By: */s/ Dylan McFarland*
                                     Dylan McFarland
                                     Seamus Molloy
                                     *Attorney for Plaintiff*